# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JUNIOR GAFATASI TULALI,<br><br>    Defendant. | Case No. 4:23-cr-00003-SLG |

### ORDER RE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO F.R.CR.P. 29 OR ALTERNATIVELY A NEW TRIAL PURSUANT TO F.R.CR.P. 33

Before the Court at Docket 119 is Defendant's Motion for Judgment of Acquittal Pursuant to F.R.Cr.P. 29 or Alternatively a New Trial Pursuant to F.R.Cr.P. 33. The Government responded in opposition at Docket 122.

### BACKGROUND

In January 2023, Mr. Tulali was indicted on one count of distributing fentanyl resulting in the death of J.L. in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).[1] In the indictment, the Government also sought an enhanced statutory penalty pursuant to 21 U.S.C. § 841(b)(1)(A).[2] After a five-day trial, a jury found Mr. Tulali guilty of

---

[1] Docket 2 at 1-2.

[2] Docket 2 at 2-3. The Court notes that the allegation in the indictment identifies § 841(b)(1)(A) as the applicable enhanced penalty. That statute provides for an enhanced penalty when the defendant has previously been convicted of a "serious drug felony," which is a "serious drug offense" as defined in 18 U.S.C. § 924(e)(2) and one for which (1) "the offender served a term of imprisonment of more than 12 months," and (2) "the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57). The language of the allegation in the indictment tracks the language of the statute.

the substantive offense charged in the indictment and that Mr. Tulali was subject to the enhanced statutory penalty.[3] At the end of Government's case in chief during phase 1 of the trial, Mr. Tulali first moved to dismiss the indictment, and the Court reserved ruling at that time. Mr. Tulali later moved at trial to dismiss the sentencing enhancement, which the Court denied. Mr. Tulali now moves for a judgment of acquittal or alternatively, for a new trial.

## LEGAL STANDARDS

### I. Rule 29 Motion for Judgment of Acquittal

Pursuant to Rule 29, a court must decide a motion for judgment of acquittal "on the basis of the evidence at the time the ruling was reserved."[4] The Court assesses the evidence presented at that time to determine whether it is sufficient to sustain a conviction.[5] The evidence is sufficient to sustain a conviction if, "viewing the evidence in the light most favorable to the prosecution, 'any rational trier of fact could have found the essential elements of the offenses charged beyond a reasonable doubt.'"[6] The "evidence is insufficient to support a verdict

---

However, the indictment also references § 841(b)(1)(C), which provides an enhanced penalty when a defendant has been convicted of a prior "felony drug offense." The parties agreed that the Government would submit the enhancement to jury using the language from § 841(b)(1)(A).

[3] Docket 111; Docket 112.

[4] Fed. R. Crim. P. 29(b).

[5] Fed. R. Crim. P. 29(a).

[6] *United States v. Rosales*, 516 F.3d 749, 751–52 (9th Cir. 2008) (quoting *United States v. Hinton*, 222 F.3d 664, 669 (9th Cir. 2000)).

Case No. 4:23-cr-00003-SLG, *United States v. Tulali*
Order re Defendant's Motion for Judgment of Acquittal Pursuant to F.R.CR.P. 29 or Alternatively a New Trial Pursuant to F.R.CR.P. 33
Page 2 of 9
Case 4:23-cr-00003-SLG-KFR   Document 127   Filed 10/07/24   Page 2 of 9

where mere speculation, rather than reasonable inference, supports the government's case."[7]

When viewing the evidence in the light most favorable to the government, a court does not determine witness credibility and does not consider how it would have resolved conflicts in the evidence.[8] "Therefore, in a case involving factual disputes and credibility determinations, we 'must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"[9]

Mr. Tulali maintains that the Government failed to sufficiently "connect the defendant to the specific substance consumed by J.L. that caused his death."[10] The evidence was purportedly insufficient because the Government did not present evidence that J.L.'s blood contained acetaminophen and the blue pills found in A.B.'s jacket—pills that he testified he had received from Mr. Tulali—contained acetaminophen.[11] Mr. Tulali also notes that evidence at trial showed that there were several other sources of pills in the Fairbanks area at the time Mr.

---

[7] *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc).

[8] *United States v. Alarcon-Simi*, 300 F.3d 1172, 1174 (9th Cir. 2002).

[9] *United States v. H.B.*, 695 F.3d 931, 935 (9th Cir. 2012) (quoting *Nevils*, 598 F.3d at 1164) (ellipsis in *H.B.*).

[10] Docket 119 at 3.

[11] Docket 119 at 3.

Case No. 4:23-cr-00003-SLG, *United States v. Tulali*
Order re Defendant's Motion for Judgment of Acquittal Pursuant to F.R.CR.P. 29 or Alternatively a New Trial Pursuant to F.R.CR.P. 33
Page 3 of 9
Case 4:23-cr-00003-SLG-KFR   Document 127   Filed 10/07/24   Page 3 of 9

Brown received the pills from Mr. Tulali.[12] Mr. Tulali therefore contends that "the government has failed to prove the substance consumed by J.L. came from Brown's stash of pills as opposed to some other source."[13]

Viewing the evidence in the light most favorable to the prosecution, the Court finds that a "rational trier of fact could have found the essential elements of the offenses charged beyond a reasonable doubt."[14] At trial, A.B. testified that Mr. Tulali sold him 500 Percocet pills and shipped them from California to Fairbanks. The Government introduced a photo sent by Mr. Tulali to A.B. of blue pills marked with "M30"; text messages between A.B. and Mr. Tulali were also introduced that corroborated A.B.'s testimony. A law enforcement officer testified that he discovered blue pills in A.B.'s jacket with "M30" imprinted on them, and A.B. testified that he got those pills from Mr. Tulali. A.B. also testified that he sold some of the blue pills to W.C. W.C. then testified that he sold two of the pills to J.L. W.C.'s testimony was corroborated by messages between him and both A.B. and J.L. Analysis of the pills discovered in A.B.'s jacket showed that they contained fentanyl and acetaminophen. Witnesses also testified that J.L. had a history of using prescription pain pills such as Percocet. Evidence at trial also showed that J.L. died shortly after W.C. sold him the two blue pills. Expert testimony was

---

[12] Docket 119 at 4.

[13] Docket 119 at 3.

[14] *United States v. Rosales*, 516 F.3d at 751–52 (internal quotation marks omitted).

Case No. 4:23-cr-00003-SLG, *United States v. Tulali*
Order re Defendant's Motion for Judgment of Acquittal Pursuant to F.R.CR.P. 29 or Alternatively a New Trial Pursuant to F.R.CR.P. 33
Page 4 of 9
Case 4:23-cr-00003-SLG-KFR   Document 127   Filed 10/07/24   Page 4 of 9

presented that fentanyl was in J.L.'s blood and was the cause of his death. Therefore, the Court finds that a rational trier of fact could have found beyond a reasonable doubt that the blue pills mailed by Mr. Tulali to A.B. and that were ultimately distributed to J.L. were the but-for cause of J.L.'s death. And considering that evidence in the light most favorable to the prosecution, the fact that there was also evidence at trial that there were other sources of fentanyl in Fairbanks at that time is insufficient to negate this finding.

Mr. Tulali also maintains that the Government failed to prove that J.L.'s death was a reasonably foreseeable result of Mr. Tulali's distribution of the blue pills or that Mr. Tulali intended J.L.'s death to result from distribution of the blue pills.[15] Mr. Tulali also asserts that there was no evidence at trial that he knew the blue pills contained fentanyl.

As to Mr. Tulali's first argument, he acknowledges that it is foreclosed by binding Ninth Circuit precedent. In *United States v. Houston*, the Ninth Circuit held that "[t]he Government was not required to prove that [the victim's] death was reasonably foreseeable by [the defendant] in order to obtain the heightened minimum sentence authorized by § 841(b)(1)(C)."[16] In support of his argument that the Government had to prove he intended J.L.'s death, Mr. Tulali cites *Ruan*

---

[15] Docket 119 at 4-6.

[16] 406 F.3d 1121, 1122 (9th Cir. 2005).

Case No. 4:23-cr-00003-SLG, *United States v. Tulali*
Order re Defendant's Motion for Judgment of Acquittal Pursuant to F.R.CR.P. 29 or Alternatively a New Trial Pursuant to F.R.CR.P. 33
Page 5 of 9
Case 4:23-cr-00003-SLG-KFR   Document 127   Filed 10/07/24   Page 5 of 9

*v. United States* and *Rehaif v. United States*.[17] Broadly, both *Ruan* and *Rehaif* apply the general concept that when construing criminal statutes, courts apply the "ordinary presumption in favor of scienter."[18] In *Ruan*, the Supreme Court held that "§ 841's 'knowingly or intentionally' *mens rea* applies to the 'except as authorized' clause," meaning "that once a defendant meets the burden of producing evidence that his or her conduct was 'authorized,' the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner."[19] In *Rehaif*, the Supreme Court held that, to prove a violation of the statute prohibiting certain persons from possessing firearms, the government had to prove that the defendant knew that he possessed a firearm and that he knew that he was prohibited from possessing it.[20]

While *Ruan* and *Rehaif* stand for the proposition that a general scienter requirement in a criminal statute could apply to all elements of the statute, they did not alter the elements of Mr. Tulali's crime as prescribed by the Supreme Court in *Burrage v. United States*. In that case, the Supreme Court stated the elements for a conviction pursuant to § 841(a)(1) and the death results enhancement pursuant to § 841(b)(1)(C) were (1) knowing or intentional distribution of a controlled

---

[17] Docket 119 at 5-6.

[18] *Id.* at 229.

[19] *Ruan v. United States*, 597 U.S. 450, 457 (2022).

[20] *Rehaif v. United States*, 588 U.S. 225, 227 (2019).

Case No. 4:23-cr-00003-SLG, *United States v. Tulali*
Order re Defendant's Motion for Judgment of Acquittal Pursuant to F.R.CR.P. 29 or Alternatively a New Trial Pursuant to F.R.CR.P. 33
Page 6 of 9
Case 4:23-cr-00003-SLG-KFR   Document 127   Filed 10/07/24   Page 6 of 9

substance and (2) "death caused by ('resulting from') the use of that drug."[21] Nothing in *Ruan* or *Rehaif* altered these elements. The Government is therefore not required to prove that Mr. Tulali intended the death of J.L.[22] Nor is the Government required to prove that Mr. Tulali knew that the blue pills contained fentanyl; all that is required is proof that Mr. Tulali knew that he was distributing a controlled substance, for which there was sufficient evidence to support the jury's verdict. *See United States v. Jewell,* 532 F.2d 697, 698 (9th Cir. 1976) (en banc).

Mr. Tulali also contends that the evidence the Government relied on at trial to prove that he was subject to the enhanced statutory penalty—namely, the requirement that the instant case commenced within 15 years of his release from custody for his prior drug felony—was insufficient.[23] In Mr. Tulali's view, the document submitted by the Government "does not show when Mr. Tulali was actually released" and "leaves open the possibility of an early release from prison."[24] However, viewing the evidence in the light most favorable to the

---

[21] 571 U.S. 204, 210 (2014). *See also Houston*, 406 F.3d at 1122 (noting that, for a conviction under § 841(a)(1), (b)(1)(C) with the death results enhancement, the government had to prove that the defendant (1) knowingly delivered the controlled substance to the decedent, (2) the defendant knew the drug was a controlled substance, and (3) that the drug distributed by the defendant was the actual cause of the decedent's death).

[22] Mr. Tulali also incorporates the arguments from Judge Fletcher's dissent in *United States v. Collazo*, 984 F.3d 1308 (9th Cir. 2021) (en banc), in support. However, the Court is bound by the articulation of the elements of Mr. Tulali's crime of conviction in *Burrage* and *Houston*.

[23] Docket 119 at 6-7.

[24] Docket 119 at 6.

Case No. 4:23-cr-00003-SLG, *United States v. Tulali*
Order re Defendant's Motion for Judgment of Acquittal Pursuant to F.R.CR.P. 29 or Alternatively a New Trial Pursuant to F.R.CR.P. 33
Page 7 of 9
Case 4:23-cr-00003-SLG-KFR   Document 127   Filed 10/07/24   Page 7 of 9

Government, a rational trier of fact could have found beyond a reasonable doubt that Mr. Tulali was in custody for his prior offense in 2011.[25] He was indicted in 2023, which is within 15 years of 2011, notwithstanding his actual release date.

## II. Rule 33 Motion for New Trial

Rule 33(a) provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal.[26] When reviewing a motion for new trial, in contrast to when considering a Rule 29 motion, a district court is not required to view the evidence in the light most favorable to the verdict; instead, a court may independently weigh the evidence and evaluate the credibility of the witnesses.[27] "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury."[28] A new trial should only be granted "in exceptional cases in which the evidence preponderates heavily

---

[25] *See* Docket 122 at 8.

[26] *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992).

[27] *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (citing *Alston*, 974 F.2d at 1211 (citation omitted)).

[28] *Alston*, 974 F.2d at 1211–12 (citing *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

Case No. 4:23-cr-00003-SLG, *United States v. Tulali*
Order re Defendant's Motion for Judgment of Acquittal Pursuant to F.R.CR.P. 29 or Alternatively a New Trial Pursuant to F.R.CR.P. 33
Page 8 of 9
Case 4:23-cr-00003-SLG-KFR   Document 127   Filed 10/07/24   Page 8 of 9

against the verdict."[29] In light of the discussion above, the Court finds that the evidence does not preponderate sufficiently heavily against the verdict; as such, a new trial is not warranted.

## CONCLUSION

In light of the foregoing, the Court DENIES Mr. Tulali's Motion for Judgment of Acquittal Pursuant to F.R.Cr.P. 29 or Alternatively a New Trial Pursuant to F.R.Cr.P. 33 at Docket 119.

DATED this 7th day of October 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[29] *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (quoting 2 Wright, Federal Practice and Procedure, Criminal § 553 at 487 (1969)).

Case No. 4:23-cr-00003-SLG, *United States v. Tulali*
Order re Defendant's Motion for Judgment of Acquittal Pursuant to F.R.CR.P. 29 or Alternatively a New Trial Pursuant to F.R.CR.P. 33
Page 9 of 9
Case 4:23-cr-00003-SLG-KFR   Document 127   Filed 10/07/24   Page 9 of 9